## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LISA PIAZZA, individually and on behalf of all others similarly situated, | | |
| Plaintiff, | | Case No. 20-cv-03187 |
| v. | | Judge Mary M. Rowland |
| NEW ALBERTSONS, LP, JEWEL FOOD STORES, INC, and AMERICAN DRUG STORES, LLC doing business as JEWEL-OSCO, | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lisa Piazza ("Piazza") brings a putative collective action against three corporate affiliates, New Albertsons, LP ("New Albertsons"),[1] Jewel Food Stores, Inc. ("Jewel Food Stores"), and American Drug Stores, LLC d/b/a Jewel-Osco ("Jewel-Osco," together "Defendants") for allegedly violating the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Illinois Minimum Wage Law 820 ILCS 105/1, *et seq.* ("IMWL"). Before the Court are New Albertsons's Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6) and Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1) (Dkt. 29), and Piazza's Motion for Conditional

---

[1] Defendant asserts that Piazza incorrectly named New Albertsons, *Inc.* instead of New Albertsons, *LP*. (Dkt. 30 at p. 5). "Albertsons Companies, Inc. is the parent company of Jewel-Osco and New Albertsons." *Id*. Because Plaintiff intends to name two separate subsidiaries of Albertsons Companies, Inc., (Dkt. 1 at ¶ 21), as opposed to the parent company and the Jewel-Osco subsidiary, the Court assumes Defendant is correct that Plaintiff meant to name New Albertsons, LP.

Certification and Court-Authorized Notice. (Dkt. 38). For the reasons set forth below, New Albertsons's motion is denied, and Piazza's motion is granted in part.

## BACKGROUND

Piazza seeks to conditionally certify, pursuant to 29 U.S.C. 216(b), a collective action made up of all similarly situated current and former Assistant Store Directors ("ASDs") as well as comparable salaried employees with different titles, who are or were employed by the Defendants at Jewel-Osco grocery stores. She asserts that ASDs are denied appropriate compensation when they work more than 40 hours per week, because the Defendants incorrectly classify them as exempt from the overtime requirements of the FLSA and the IMWL.[2]

Piazza has been an ASD since February of 2019. The Complaint describes how, despite being classified as managers, ASDs spend most of their time performing the same duties as non-exempt employees including helping customers, working the cash register, moving products, stocking shelves, setting and resetting displays, counting inventory, and cleaning the store. ASDs are not responsible for hiring, firing, making employment-related recommendations, scheduling, or disciplining employees. According to Piazza they do not exercise meaningful independent judgment or discretion. Piazza herself is regularly required to work 50 or 60 hours a week while performing these tasks, and does not receive time-and-a-half pay when she does so.

---

[2] All facts referenced in this Memorandum Opinion & Order come from the Complaint unless otherwise specified. Other pleadings and briefs will be referred to by their docket number, followed by the page or paragraph number.

Piazza has worked at four different Jewel-Osco stores. Based on this experience, she asserts that all ASDs perform the same non-managerial duties. She also asserts that all ASDs are "subject to the same corporate-derived policies and procedures; are uniformly classified as exempt from overtime; and are uniformly denied overtime compensation for hours worked in excess of forty (40) in a workweek." (Dkt. 1, ¶ 60). Finally, she asserts that all ASDs "consistently worked more than forty (40) hours per week." (Dkt. 1, ¶ 61).

## MOTION TO DISMISS

### A. Legal Standards

New Albertsons argues that Piazza has failed to allege facts demonstrating it is her employer. According to New Albertsons this justifies dismissal for two reasons: (1) Piazza has failed to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6); and (2) Piazza has no standing to sue New Albertson, meaning the court lacks subject matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1).

To overcome a Rule 12(b)(6) motion, "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This Court "must accept as true all factual allegations in the [. . .] complaint and draw all permissible inferences" in Piazza's

3

favor. *Id.* (quoting *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (internal quotation marks omitted)). However, "[w]hile a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate under [Rule] 8." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

To survive New Albertsons' standing challenge, Piazza must show:

(1) [that she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) [that] the injury is fairly traceable to the challenged action of the defendant; and (3) [that] it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016) (citations omitted).

When considering a facial challenge to subject matter jurisdiction, the Rule 12(b)(1) analysis is the same analysis used to determine whether a complaint adequately states a claim in accordance with Rule 12(b)(6). *See Silha v. ACT, Inc.,* 807 F.3d 169, 174 (7th Cir. 2015) ("when evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)"). The party asserting federal jurisdiction has the burden of proof. *See Farnik v. F.D.I.C.*, 707 F.3d 717, 721 (7th Cir. 2013).

### B. Legal Analysis

Both challenges, failure to state and claim and lack of standing, turn on whether Piazza has adequately alleged that New Albertsons was her employer under the FLSA. The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e). To "employ" means to "suffer or permit to work." *Id.* § 203(g). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." In the absence of a meaningful statutory definition, and consistent with Supreme Court guidance to construe the terms "employer" and "employee" broadly, the Seventh Circuit has concluded that courts must examine the "economic reality" of the working relationship to assess whether an entity is an employer. *Hollins v. Regency Corp.,* 867 F.3d 830, 835 (7th Cir. 2017).

In considering the "economic realities" of working relationships, courts consider "the totality of the circumstances" instead of applying "formalistic labels or common law concepts of agency." *Villareal v. El Chile, Inc.,* 776 F.Supp.2d 778, 785 (N.D. Ill. 2011) (denying summary judgment on whether the two individual owners had sufficient control over Plaintiff's work environment to qualify as employers after applying the "economic realities" test) (citations omitted). Courts examine whether the defendant (1) had the power to hire and fire the employee, (2) supervised and controlled the employee's work schedule or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *See, e.g., Zampos v. W & E Commc'ns, Inc.*, 970 F.Supp.2d 794, 802 (N.D. Ill. 2013) (granting

summary judgment to Comcast in joint employer context where court found secondary employer, Comcast, did not exercise sufficient control over employees of the primary employer, the installer). It is undisputed that an employee may have more than one employer. Indeed, federal regulations contemplate that entities that share common control over an employee may be deemed "joint employers" under the FLSA. 29 C.F.R. § 791.2(a).[3] Courts apply the same economic reality test "to determine whether more than one employer may be held liable under the FLSA." *Babych v. Psychiatric Solutions, Inc.,* No. 09 C 8000, 2011 WL 5507374, at *7 (N.D. Ill. Nov. 9, 2011) (citing *Reyes v. Remington Hybrid Seed Co., Inc.,* 495 F.3d 403, 406–08 (7th Cir. 2007)). And while the joint employer analysis turns on the specific facts of each case, the Seventh Circuit has emphasized that "for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee." *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns, Ctr.,* 536 F.3d 640, 644 (7th Cir. 2008) (applying FLSA standard for joint-employer to claim under the Family and Medical Leave Act). *See Babych,* 2011 WL 5507374, at *7–8 (during conditional certification process, court rejects argument that "corporate office" which maintained employee records and benefits information was not a "joint employer" with the hospital); *Nehmelman v. Penn Nat. Gaming, Inc.,* 790 F. Supp. 2d 787, 796–98 (N.D. Ill. 2011) (denying dismissal and finding a gaming company and its wholly owned subsidiary both employers for purposes of standing and Rule 12(b)(6)).

---

[3] In determining whether a party is a joint employer, the C.F.R. advises the Court to consider whether the person or entity: (i) hires or fires the employee; (ii) supervises and controls the employee's work schedule or work conditions; (iii) sets the employee's rate and method of payment; and (iv) maintains the employee's employment records. 29 C.F.R. § 791.2(a)(1) (2020).

The parties agree about the applicable law. New Albertsons asserts that Piazza has not alleged sufficient facts that it (as opposed to the co-defendants) exercised control over her working conditions. According to New Albertsons "Plaintiff worked exclusively in Illinois at a Jewel/Osco grocery store. She has never worked for New Albertsons." (Dkt. 30 at 2). Piazza argues and *alleges* that New Albertsons LP qualifies as a joint employer because *it shared control* over her work environment. More specifically, the complaint alleges that New Albertsons was her employer as "defined by the FLSA 29 U.S.C. § 203(d)"; and "Defendants jointly and collectively maintained control, oversight, and direction over Plaintiff and other similarly situated ASDs, including with respect to the timekeeping, payroll, and other employment practices that applied to them." (Dkt. 1, ¶31). As it must, the Court accepts these allegations as true.

New Albertsons argues the allegations are conclusory and relies on the Supreme Court's caution that "threadbare recitals of the elements of a cause of action" and other "conclusory statements" are not entitled to the same presumption of truth as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); (Dkt. 30 at 7). Defendant relies on *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1129 (N.D. Ill. 2017), an FLSA case in which two subsidiaries (and the parent company) that owned Applebee's franchises were named as defendants. *Ivery* found that the complaint, containing boilerplate allegations similar to the ones here, lacked specific allegations about "who hired [the plaintiff], paid her, or directly supervised her work." *Id.* So although the plaintiff alleged a close relationship between the three corporate

7

entities, she had failed to properly allege that one of the subsidiaries exercised control over her employment. *Id.* In dismissing one of the defendant franchisees without prejudice, the *Ivery* court noted that plaintiff did not "suggest that this sort of basic information (e.g., who hired fired and controlled her work) is beyond her ken." *Id.*

To the contrary, Piazza asserts that "given the information that is publicly available" it is not possible for "Plaintiff to allege exactly which Defendant owns which stores that Plaintiff worked in." (Dkt. 35, 9).[4] Reminding the Court that she has not had the benefit of discovery, Piazza argues that the determination of whether entities are joint employers should be left to summary judgment. *See Watson v. Jimmy John's, LLC*, No. 15 C 6010, 2015 WL 8521293, at *3 (N.D. Ill. Nov. 30, 2015) (in a case involving restaurant franchisees and its corporate franchisor "whether an entity is liable under the FLSA as a joint employer is a merits issue."); *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 855 (N.D. Ill. 2017) ("[g]iven the factual issues involved, [. . .] the joint employer question is typically addressed at the decertification or summary judgment stage."); *Lamarr v. Illinois Bell Tel. Co.*, No. 15 C 8660, 2017 WL 2264348, at *2 (N.D. Ill. May 24, 2017) ("[t]he joint employer determination is a determination that involves a consideration of matters outside the pleadings and is premature at this juncture."). The Court agrees that in this case it would be premature to dismiss New Albertsons before discovery.

---

[4] The Complaint refers to a website to assert that Defendants *together* "own and operate approximately 188 "Jewel-Osco" stores located in Illinois, Iowa, and Indiana." (Dkt. 1, ¶ 24). The website explains that "Jewel-Osco is a vital part of Albertsons Inc., a privately held grocery company" and that at present, "Jewel-Osco operates 188 stores throughout the Chicagoland area, Indiana and Iowa". https://www.jewelosco.com/about-us.html (last accessed January 27, 2021). It does not indicate which subsidiary owns each location.

Moreover, in support of her motion for conditional certification, Piazza has submitted Jewel-Osco's letter offering her employment. The letter indicates that she may be eligible for a 401(k) Plan run by "*New* Albertsons *Inc.* (NAI)". (Dkt. 39, Ex. 2 at 8) (emphasis added).[5] This establishes at least that an entity called New Albertsons Inc. (which is seemingly distinct from the parent company, Albertsons Inc.) maintained business records and a benefit program for Jewel-Osco employees. *See Babych,* 2011 WL 5507374, at *7–8 (during conditional certification process, court rejects argument that "corporate office" which maintained employee records and benefits information was not a "joint employer" with the hospital). While it by no means establishes liability on the part of New Albertsons *LP*, this documentation supports Piazza's naming *New Albertsons* as a Defendant.

Cases cited by New Albertsons finding dismissal appropriate because plaintiffs failed to properly allege that a Defendant had exercised control sufficient to be considered a joint employer are easily distinguishable. In *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016), the court affirmed the dismissal of the case on Rule 12(b)(6) grounds and rejected plaintiff's argument that "employment status is an inherently fact intensive inquiry and thus should not be decided at the motion-to-dismiss stage." In *Berger* the court determined that "as a matter of law, that student athletes are not employees under the FLSA, [therefore] no discovery or further development of the record could help [Plaintiffs]." *Id, relying on Vanskike v. Peters,*

---

[5] Opt-in Brenda Lorenzana also provides a "2019 Salary Review Statement" that references Albertsons Companies. (Dkt. 39, Ex. 2 at 9).

974 F.2d 806, 812 (7th Cir. 1992) (affirming dismissal of inmate's case who worked as a janitor, kitchen worker and gallery worker while incarcerated, because Department of Corrections not an employer under the FLSA). In the present case, Piazza has alleged that New Albertsons controlled aspects of her work. If she is unable to establish that following discovery, New Albertsons will have its remedy. But there is no basis to find "as a matter of law" that Piazza is not an employee, after all a store employee is a far cry from a student athlete. *See Shah v. Littelfuse Inc.*, 2013 WL 1828926, at *3 (N.D. Ill. Apr. 29, 2013) (dismissing a temporary employment agency because "[n]early every factual allegation in Shah's Complaint pertains to [the client not the temporary agency]" and the temporary agency and their client were two unrelated corporate entities.); *Richardson v. Help at Home, LLC*, No. 17 CV 00060, 2017 WL 2080448, at *3 (N.D. Ill. May 15, 2017) (where plaintiff named parent company, Help at Home, and direct employer, Oxford Healthcare, court dismissed Help at Home because Plaintiff (1) made "only the bare allegation" that she was an employee and (2) failed to respond to Help at Home's argument that it did not qualify as a joint employer); *Gunty v. Exelon Corp.*, 2014 U.S. Dist. LEXIS 155667, at *2 (N.D. Ill. Nov. 4, 2014) (dismissing Exelon Nuclear from ADA case because it "is merely a division of Exelon Generation. An entity with no independent legal or corporate identity cannot be considered a legal person, and therefore cannot be sued."); *Marijan v. Univ. of Chicago*, No. 17-CV-9361, 2018 WL 3463272, at *6 (N.D. Ill. July 18, 2018) (in a Title VII case, finding plaintiff waived arguments about a purported joint

employer by failing to name them in her EEOC complaint and failing to "allege that [they] had control over her employment.").

Piazza has alleged that New Albertsons owned the stores where Piazza worked together with the other defendants and "maintained control, oversight, and direction over Plaintiff [. . .] including with respect to the timekeeping, payroll, and other employment practices." (Dkt. 1, ¶ 31). That is enough to allege the New Albertsons is an employer for purposes of the FLSA. Defendant's motion to dismiss is denied without prejudice.

## CONDITIONAL CERTIFICATION

The Court now turns to Piazza's motion for conditional certification of the collective action. Defendants do not dispute that Piazza performed the tasks she claims to have performed, that she was classified as exempt from the overtime requirements of the FLSA, that she worked more than 40 hours per week, or that she was not paid overtime. (Dkt. 28, 2–3, 13). Instead, Defendants assert that Piazza has failed to make the "modest factual showing" that there was a common policy or plan at work that violated the law. (Dkt. 49, 15). Next Defendants argue that Piazza has failed to show that similarly situated employees exists. (Dkt. 49, 16). Finally, Defendants believe the proposed notice should be altered.

### A. Legal Standard for Conditional Certification

Section 216(b) of the FLSA "gives employees the right to bring their FLSA claims through a collective action on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010) (citing

29 U.S.C. § 216(b)). The FLSA does not specify how courts should handle collective actions, so they have "wide discretion" to determine how these suits should proceed. *Weil v. Metal Technologies, Inc.*, 925 F.3d 352, 357 (7th Cir. 2019) (citing *Alvarez*, 605 F.3d at 449). Courts in the Northern District of Illinois employ a two-step process. Step one is the conditional certification stage, and a plaintiff need only make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."[6] *Russell v. Ill. Bell. Tel. Co.*, 575 F. Supp. 2d. 930, 933 (N.D. Ill. 2008). Courts employ a "lenient interpretation" of the term "similarly situated" at this stage. *Ivery,* 280 F. Supp. 3d at 1133. Plaintiffs must provide "some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other

---

[6] The Court declines New Albertsons' invitation to deviate from the well-established process or standard to allow the parties to engage in extensive discovery based on *Swales v. KLLM Transport Services, LLC*, __ F.3d __, No. 19-60847, 2021 WL 98229 *4–7 (5th Cir. Jan. 12, 2021). (Dkt. 53). The *Swales* plaintiffs brought an FLSA challenge on behalf of truck drivers subject to independent contractor agreements. *Id.* at 4. Unlike here the "parties had engaged in substantial [. . .] discovery on whether Plaintiffs and potential opt-ins were similarly situated" (including 11 depositions and 19,000 documents exchanged). The *Swales* court decided that because a threshold merits question (did "a valid independent-contractor classification [bar] application of the FLSA") was intertwined with the question whether the collection action members were similarly situated, it would not defer the merits question until after notice was served. *Id.* at 7. Acknowledging the district court's "broad, litigation management discretion", the court remanded the "conditional certification" question. *Id.* at *9. Aside from the fact that *Swales* disregards well-established precedent in this district and its sister circuits, its concern about a threshold issue (independent contractor agreements) is not a factor here (a case focused on whether employees should be classified exempt). *See Babych,* 2011 WL 5507374, at *3 (rejecting intermediate standard because "inquiry at the conditional certification stage is necessarily limited by the lack of detailed information about the other opt-in plaintiffs, and application of the stringent standard might prevent some plaintiffs from pursuing their claims."); *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2013 WL 5433593, at *3 (N.D. Ill. Sept. 30, 2013) (declining to use intermediate standard "given the conditional nature of this motion and the fact that the parties have not completed discovery"); *Betancourt v. Maxim Healthcare Servs., Inc.*, No. 10 C 4763, 2011 WL 1548964, at *13 (N.D. Ill. Apr. 21, 2011) (declining to apply intermediate standard because the "extent of discovery in this case is insufficient"); *Molina v. First Line Solutions LLC*, 566 F.Supp.2d 770, 786 (N.D. Ill. 2007) (declining to skip first step where parties did not yet have all the information that would be available to them once they knew who would opt in to the case).

similarly situated employees were subjected to a common policy that violated the law." *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 CV 7312, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016) (internal quotations omitted). Conditional certification is not automatic and to proceed as a collective action, plaintiffs must "demonstrate similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally must be present." *Briggs v. PNC Fin. Servs. Grp., Inc.,* No. 15 CV 10447, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 16, 2016) (citations omitted). If a plaintiff can show that others are similarly situated, the Court may "conditionally certify the case as a collective action and allow notice of the case to be sent to similarly situated employees who may then opt in." *Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 870 (N.D. Ill. 2017). The merits of a case are not decided at this stage and the Court does not "weigh evidence, determine credibility, or specifically consider opposing evidence presented by a Defendant." *Bergman v. Kindred Healthcare, Inc.,* 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013) (citation omitted). That analysis takes place during step two, "following the completion of the opt-in process and further discovery." *Russell*, 575 F. Supp. 2d at 933.

### B. Common Policy or Plan

Defendants argue that because "classifying employees as exempt is not unlawful in and of itself" and "the legality of classifying employees as exempt can only be determined by reviewing the job duties actually performed by the exempt

employees" Piazza must "show that she and the ASDs she seeks to represent are similarly situated with respect to their job duties." Piazza has provided four affidavits signed by other ASDs, each of which demonstrates a likely case of misclassification. These affidavits describe conversations between the affiant and still other ASDs who performed similar duties. (Dkt. 39, Ex. 2, ¶ 13; Ex. 3, ¶ 16; Ex. 4, ¶ 17). Each affiant described the ASD duties he or she performed, between 80% and 90 % of the time as being the same duties as those performed by hourly workers (including cleaning the store, moving product, working cash register, stocking shelves, and setting displays). *Id*. This is precisely the "modest factual showing sufficient to demonstrate that [Piazza] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Russell v. Ill. Bell. Tel. Co.*, 575 F. Supp. 2d. 930, 933 (N.D. Ill. 2008). Piazza alleges a common policy or plan by Defendants to classify all ASDs as exempt from the overtime requirements of the FLSA even though ASDs were ineligible for that classification based on the duties they performed. That is sufficient. *See Kujat v. Roundy's Supermarkets Inc.*, No. 18 CV 5326, 2019 WL 1953107, at *3 (N.D. Ill. May 2, 2019)

### C. Similarly Situated Plaintiffs

Defendants next argue that the ASDs Piazza seeks to represent are not in fact "similarly situated." (Dkt. 49, 16–19). Along with her own declaration, (Dkt. 39, Ex. 1); Piazza submits the declaration of Brenda Lorenzana, (Dkt. 39, Ex. 2); Lauren Stonesifer, (Dkt. 39, Ex. 3); and, Jeffrey Vail, (Dkt. 39, Ex. 4). Each affiant worked as an ASD at one or more stores operated by the Defendants. (Dkt. 39, 3). Each describes

14

conditions of his or her employment that are strikingly similar to those described by Piazza. They all report that the role of an ASD did not vary significantly from one store to another, and that all stores operated using a common handbook of procedures. (Dkt. 39, Ex. 1, ¶ 3; Ex. 2, ¶ 9; Ex. 3, ¶ 3, 12–13; Ex. 4, ¶ 2, 10–11, 14–17). ASDs were all salaried workers eligible for the same bonuses, (Dkt. 39, Ex. 1, ¶ 7; Ex. 3, ¶ 6, 9; Ex. 4, ¶ 6, 7), each was scheduled to work 45 hours per week but required to work much more, (Dkt. 39, Ex. 1, ¶ 4–5; Ex. 2, ¶ 5, 7; Ex. 3, ¶ 5, 7; Ex. 4, ¶ 3–4), and none were required to report the actual number of hours they worked in any given week, (Dkt. 39, Ex. 1, ¶ 6; Ex. 2, ¶ 4; Ex. 4, ¶ 5). They report that they performed the same duties, by and large, which included stocking shelves, building displays, cleaning the premises, counting inventory, and helping customers. (Dkt. 39, Ex. 1, ¶ 9–14; Ex. 2, ¶ 2, 8; Ex. 3, ¶ 4; Ex. 4, ¶ 8–9). All of these opt-in plaintiffs were classified as exempt from the overtime provisions of the FLSA, (Dkt. 39, Ex. 1, ¶ 7–8; Ex. 2, ¶ 4, 13; Ex. 3, ¶ 5; Ex. 4, ¶ 6), and none received overtime pay. (Dkt. 39, Ex. 1, ¶ 7; Ex. 2, ¶ 4; Ex. 3, ¶ 5; Ex. 4, ¶ 6).

The Defendants provide eleven affidavits, signed by different ASDs, which purport to show that the experiences of these four ASDs were atypical. (Dkt. 49, Exs. 1–11). Based on the information contained in these affidavits, Defendants argue that in fact most ASDs *do* perform managerial duties such as hiring, training, and disciplining subordinates, handling customer complaints, and communicating with vendors. (Dkt. 49, 6–14). They attribute the atypical experiences of Piazza, Lorenzana, Stonesifer, and Vail to the fact that the role of an ASD varies based on

the size and location of the grocery store, and the fact that even within one grocery store two ASDs (such as those employed by the two divisions, Jewel and Osco) often have different duties. (Dkt. 49, 2–3). They also claim that Piazza and the opt-in plaintiffs were atypical because they either moved from store to store frequently, or did not hold their jobs long enough to take on the managerial duties of an ordinary ASD. (Dkt. 49, 6–14).

These are quintessential examples of "happy camper" declarations, and the Court need not consider them at this stage in the litigation. *See Barrett v. NorthShore Univ. Healthsystem*, No. 17 CV 09088, 2019 WL 4412726, at *4 (N.D. Ill. Sept. 16, 2019). Conditional certification is not the time to "weigh evidence, determine credibility, or specifically consider opposing evidence presented by a Defendant" so the Court will not attempt to determine whether the experiences of the eleven ASDs assembled by the Defendants are more or less typical than the experiences of the opt-in plaintiffs and Piazza. *Bergman v. Kindred Healthcare, Inc.,* 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013) (citation omitted). After discovery the Defendants will have the opportunity to show that ASDs who opt in are not in fact similarly situated, and therefore cannot be represented by Piazza in this collective action.

Plaintiffs need only provide "some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 CV 7312, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016) (internal quotations omitted). She has done

16

so. Therefore, the Court grants Piazza's motion in part, and conditionally certifies this collective action.

### D. Proposed Notice

Piazza has furnished the Court with both a proposed notice and a proposal for the distribution of that notice. (Dkt. 39, Ex. 10; Dkt. 38, Ex. 1). She first requests that the Defendants be ordered to produce the "names, addresses, telephone numbers (including cell phone numbers), dates of employment, locations of employment, and work and personal e-mail addresses" of "all persons employed by Defendant as Assistant Store Managers in the United States at any time on or after August 26, 2017 to the present" within seven days. (Dkt. 38, Ex. 1 at 1–2). Within 21 days of receiving that information, Piazza's counsel would like to distribute notices "via U.S. Mail, e-mail, and text (if available)" and save the notice "in electronic format on a case specific website created by Plaintiff." Piazza also requests that the Defendants be required to post the notice "in a conspicuous location in the back room/office in each of Defendants' retail stores throughout the United States." *Id.* at 2. The entire proposed opt-in period would be sixty days long, and Piazza would like to re-send the notice, once again via mail, email, and text, after 30 days to all ASDs who have not responded by that time.

The Defendants object to four aspects of this notice procedure.[7] First, they object to the form and content of the notice, and ask to be allowed to meet and confer

---

[7] Defendants do not object to the class of recipients (ASDs employed from August 26, 2017 onwards), the 60-day opt-in period, the requirement that they post the notice in stores, the creation of a website for posting the notice and collecting responses, or the production of names and addresses within seven days of the issuance of an order by the Court. However, because the Court will be requiring more

with Piazza's counsel about revisions. Second, they argue that notice should only be provided by mail. Third, they argue that a reminder notice should not be provided. And fourth, they argue that in order to protect the privacy of Jewel-Osco's employees, only a third-party administrator (not Piazza's attorneys) should receive contact information and consent forms. (Dkt. 49, 20–23).

### 1. Form and Content of the Notice

Defendants first object to the heading of the proposed notice, which reads "**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**." (Dkt. 39, Ex. 10). The Court agrees that this heading is not sufficiently neutral and is suggestive of "judicial endorsement of the merits of the action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174, (1989). While it is true that "[a]bsent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice" the Defendants' objections to this heading are reasonable. *Ivery*, 280 F. Supp. 3d at 1139 (citation omitted). This Court has approved notices that identified the Court in the heading, but only that heading also included the name of the case. *See, Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 851 (N.D. Ill. 2008) ("Plaintiff must remove this heading [containing the Court's name] from the notice or, alternatively, include the entire caption of the case so that it is clear the notice is a court document and not some type of letter from the Court."). Therefore, the notice heading must include the case caption.

---

information than the Defendants initially contemplated providing, they will have 30 days to produce the information described below.

Defendants next ask that the notice include language informing "opt-ins that they may have to pay for Defendants' fees and costs in the event their claims are unsuccessful." Although the Defendants cite one instance in which such language was approved, district courts in this circuit do not generally require that language. *Compare Garcia v. Elite Labor Serv., Ltd.,* No. 95 C 2341, 1996 WL 33500122 (N.D. Ill. July 11, 1996) (including possibility of opt-in plaintiffs being responsible for attorneys' fees in a notice) *with Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 843 (N.D. Ill. 2016) (noting the dangers of chilling participation and not requiring this language because "Defendant is a large corporation with tens of thousands of employees, and the odds of a fee award to prevailing defendants under 216(b) are long") *and Slaughter v. Caidan Mgmt. Co.*, LLC, 317 F. Supp. 3d 981, 993 (N.D. Ill. 2018) (noting this split and collecting cases).

Because this language would have an undeniable chilling effect on opt-ins and Piazza's counsel have stipulated that they will bear the costs if they do not prevail, (Dkt. 51, fn. 11), the Court will not require this language to be added to the notice.

### 2. Delivery of the Notice

Defendants argue that Piazza should not be permitted to give notice by email (personal or business) or text message. Email notice has become ubiquitous and the Court will allow it. *See, for example, Kujat v. Roundy's Supermarkets, Inc., et al.*, No. 18 CV 5326, 2019 WL 1953107 (N.D. Ill. May 2, 2019) (providing plaintiffs with telephone numbers and email addresses); *Bigger v. Facebook*, 375 F. Supp. 3d 1007, 1025 (ordering the production of email address, telephone number, and other

information) (partially reversed and remanded on other grounds); *Ruffolo v. LaSalle Grp., Inc.*, No. 18 CV 3305, 2019 WL 978659 (N.D. Ill. Feb. 28, 2019) (ordering the production of both email address and telephone numbers). Defendants are ordered to produce both the business and personal email addresses of the ASDs included in this collective action.

Notification via text message, however, is not approved. Piazza provides no examples of cases from the Seventh Circuit in which text messages were sent as a primary means of giving notice. *See Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981, 994 (N.D. Ill. 2018) ("In the Court's view, most people do not expect to receive unsolicited business communications via text message."); *Muir v. Guardian Heating & Cooling Servs.*, No. 16 CV 9765, WL 959028 (N.D. Ill. Mar. 13, 2017) (Denying the use of text messages to contact every possible collective action member); *Haugen v. Roundy's Illinois, LLC d/b/a Mariano's*, No. 18 CV 7297 (N.D. Ill.) (citation not yet available, order at Dkt. 54) (allowing notice via text message only when emails and first-class mailings are undeliverable); *DePyper v. Roundy's Supermarkets, Inc. et al*, No. 20 CV 02317 (N.D. Ill.) (citation not yet available, order at Dkt. 37) (same).

### 3. Reminder Notices

Likewise, Piazza's request for permission to send reminder notices is denied. *See Hudgins v. Total Quality Logistics, LLC*, No. 16 CV 7331, 2016 WL 7426135, at *18 (N.D. Ill. 2016) (absent evidence that email and first class mail are ineffective, reminders would be "unnecessary and overly intrusive" and "could be interpreted as

encouragement by the Court to join the lawsuit"); *Slaughter v. Caidan Mgmt. Co.*, LLC, 317 F. Supp. 3d 981, 992 (N.D. Ill. 2018) (same).[8] The Court is sensitive to Piazza's concerns about the global pandemic and the U.S. Postal Service's budgetary challenges, but by approving the use of both personal and business email addresses, the Court intends to alleviate those concerns without the need for reminder notices.

### 4. Confidentiality of Contact Information

Finally, Defendants request that all contact information and consent forms be kept from Piazza's attorneys, and that access be granted only to their third-party administrators. Defendants argue that this is necessary to keep Piazza's attorneys from engaging in additional "contact or solicitation." (Dkt. 49, 23). This request is denied. The personal information provided will be subject to a protective order. Counsel are to confer and submit an agreed protective order within 10 days of this order.

### CONCLUSION

For the reasons stated above, Plaintiffs' motion for step-one notice of their FLSA collective action is granted as follows:

(1)     Defendants shall produce the names, dates of employment, locations of employment, last known addresses, personal email addresses, and corporate email addresses of the following "Collective Members": Defendants' current and former ASDs who were employed during any week from August 26, 2017 through the present at any of Defendants' locations. ("Employee Information").

---

[8] Piazza cites two cases in which the Court reached the opposite conclusion: *Kujat v. Roundy's Supermarkets, Inc., et al.*, No. 18 CV 5326, 2019 WL 1953107 (N.D. Ill. May 2, 2019); *Haugen v. Roundy's Illinois, LLC d/b/a Mariano's*, No. 18 CV 7297 (citation not yet available, order at Dkt. 51). These requests were all unopposed and are therefore unpersuasive.

(2)     Defendants shall provide the Employee Information in an electronic form that can be used by the Plaintiffs in delivering the Court-approved Notice. If the information is not stored electronically, Defendants shall provide it in written form. This information must be produced to Plaintiffs within 30 days of the entry of this Order.

(3)     The Court authorizes that the Notice and Consent Form submitted as Exhibit 10 to Plaintiffs' motion (Dkt. 39), may be sent to those individuals whose names are being provided as required by this Order along with a self-addressed, postage paid return envelope for U.S. Postal Mailing. The Notice must be modified consistent with this Order. The Notice and Consent forms shall be mailed by first class mail and may also be sent electronically in the manner described above.

(4)     Notice may be posted on a website maintained by Plaintiff's counsel or the third-party administrator. Notice must be posted in a conspicuous location in the back room, office, or similar employee-accessible common area of each of the Defendants' grocery stores.

(5)     Opt-in collective members are given 60 days after the date the Notice and Consent forms are mailed to file a Consent to Join form opting-in to this litigation

(6)     A Consent to Join that is postmarked on the deadline is considered timely. Consents received by mail without postmarks are considered timely if received within five business days of the deadline. Plaintiffs shall provide the Court with a notice indicating the date on which the Notice forms were initially mailed.

(7)     Within 10 days after the close of the Opt-In Period, Plaintiffs' counsel will file the consent forms for the Opt-In Plaintiffs.

(8)     Within 21 days after the close of the opt-in period, the Parties shall confer pursuant to Rule 16(b) and prepare an Initial Status Report as provided for on the Court's website.

E N T E R:

Dated: February 3, 2021

_____
MARY M. ROWLAND
United States District Judge

22