**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LISA PIAZZA, individually and on behalf of all others similarly situated, | Case No. 1:20-cv-03187 |
| Plaintiff, | Judge Mary M. Rowland |
| v. | Magistrate Judge Sheila M. Finnegan |
| NEW ALBERTSONS, INC., JEWEL FOOD STORES, INC., and AMERICAN DRUG STORES, LLC d/b/a JEWEL-OSCO, | |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' EMERGENCY MOTION FOR STAY OF LITIGATION AND EMERGENCY HEARING AND CROSS-MOTION FOR SANCTIONS AND DEPOSITIONS OF ERIC STEVENSON AND LUIGI DE MATTEO**

Plaintiff Lisa Piazza ("Plaintiff") responds to Defendants' Emergency Motion for Stay of Litigation and Emergency Hearing Regarding Plaintiffs' Counsel Jason Conway's Potential Witness Tampering and Fraudulent Representations Regarding Interrogatory ("Defendants' Motion"). ECF No. 176.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On March 2, 2022, Defendants served written discovery requests on the named Plaintiff, Lisa Piazza, and 15 of 30 Discovery Opt-Ins (opt-ins subject to representative merits-related discovery).[1] *See* Exhibit A, at ¶2. Two months later, on May 4, 2022, Defendants served discovery requests on the remaining 15 Discovery Opt-Ins. *Id*. In response, the undersigned reached out to Plaintiff and each of the Discovery Opt-Ins via telephone and e-mail regarding: (1) Defendants' discovery requests (including e-mailing a copy them a copy); (2) preparing full and complete responses to Defendants' requests (subject to Plaintiff's counsel's objections); (3) and obtaining a signed verification from each attesting to the accuracy and truthfulness of their responses. *Id.* As experienced counsel charged with litigating this action, the undersigned obtained detailed information from Plaintiff and the Discovery Opt-Ins regarding, among other things, the information sought by Defendants' interrogatories as well as information relevant to the prosecution of their claims and this action. *Id*. Plaintiff's discovery responses were served on Defendants on May 2, 2022. *Id*, at ¶4. A verification was signed on May 3, 2022. *Id*.

On July 7, 2022, Discovery Opt-Ins Eric Beauregard, Nicole Brock, Lakasha Brown, John Carlson, Timothy Desch, Cheryl Dillon, James Gibson, Camerino Hurtado, Tod Karasoff, Jessica Kuschel (Burke), Robert Kisielewicz, Timothy Lindberg, Ashley Moore, Mark Paulsen, Michael

---

[1] The opt-ins are referred to as "Discovery Opt-Ins." ECF No. 115. The Court ruled that 15 opt-ins would be selected randomly, and 15 opt-ins chosen by Defendants. *Id*. The Court permitted Defendants to serve five interrogatories and five requests for documents on each of the 30 opt-ins, comprising approximately 300 discovery requests. ECF No. 115.

Ray, Aurelio Salazar, Michelle Schreck, Robert Strawn, and Joseph Winquist ("Subject Discovery Opt-Ins") served their verified discovery responses on Defendants. *Id.*, at ¶5. On November 18, 2022, Plaintiff and the Subject Discovery Opt-Ins served supplemental discovery responses on Defendants. *Id.*, at ¶27. In the time since, Plaintiff and nearly all of the Subject Discovery Opt-Ins have further supplemented their interrogatory answers in response to facts and information learned in May 2023.[2] *Id.*, at 31. Those responses were accompanied by signed verifications. *Id.* However, due to a mistake by the undersigned, the verifications produced for the November 18, 2022 discovery responses were not new – they were the verifications which accompanied their original discovery responses (an issue that was first brought to Plaintiff's counsel's attention in early April 2023). *Id.*, at ¶28. After investigating the issue, on May 8, 2023 Plaintiff's counsel confirmed that they had inadvertently produced the original verifications and were in the process of again supplementing Plaintiff's and the Discovery Opt-Ins' discovery responses (based on new and recent facts and information which had been disclosed by Defendants). *Id.*, at ¶¶29, 30.

At the same time – and unbeknownst to Plaintiff's counsel – Defendants were engaged in *ex parte* communications with one Discovery Opt-In, Timothy Lindberg, regarding his continued participation in this action. Although Mr. Lindberg is represented by Plaintiff's counsel, Defendants spoke to Mr. Lindberg about the lawsuit and, on the eve of his deposition, procured an unverified and unsigned e-mail statement from him in which he expresses his fear of losing his job because of his participation in the lawsuit. Mr. Lindberg also indicates that he did not want to be involved in the lawsuit. However, as Defendants acknowledge, Mr. Lindberg consented to join the

---

[2] Eric Beauregard discontinued his participation in this case and his consent was withdrawn on May 4, 2023. ECF No. 166. In the interim, a number of replacement Discovery Opt-Ins have been selected, including three – Patrick Pucchietti, Marc Thierry, and Todd Pflueger – who have already served verified discovery responses on Defendants (including supplemental responses). Discovery responses for five additional Discovery Opt-Ins – Gary Miller, Adam Mobley, Lisa Garland, Radoslaw Wazny, and Terri Williams – are due in late June.

action and, as outlined below, has received numerous e-mail updates from counsel regarding the case, spoke with the undersigned in order to prepare discovery responses, searched for documents and other materials responsive to Defendants' discovery responses, and was actively communicating with the undersigned regarding his deposition. *Id*., at ¶36.

Now, after completing several Plaintiff and Opt-In depositions (and scheduling approximately a dozen more), receiving multiple supplemental discovery responses from Plaintiff and Opt-Ins (including in response to facts and information which were produced at the eleventh hour by Defendants) and responsive documents, and serving multiple third-party subpoena's seeking records relating to Plaintiff and several Opt-Ins' pre- and post-employment with Defendants, New Albertsons (1) accuses the undersigned of "witness tampering and intimidation relating to opt-ins;" and (2) making "fraudulent representations to the Court" regarding the November 18, 2022 supplemental interrogatory responses from Plaintiff and the Subject Discovery Opt-Ins. *See generally*, Defendants' Motion. In addition, during the Court's June 7, 2023 hearing, counsel for Defendants, Jennifer Schilling, Esq., alleged that the undersigned "had engaged in the same behavior before another court and has a special master and other sanctions before him." *See* Exhibit B (June 7, 2023 Tr.), at 10:23-25. In nearly 20 years of practice, the undersigned has not experienced nor been subject to such unfounded and unsubstantiated claims. Accordingly, and for the reasons outlined below, Plaintiff's counsel respectfully requests that Defendants' Motion be denied, in its entirety.

## II.     DEFENDANTS' UNFOUNDED ALLEGATIONS OF WITNESS TAMPERING

### A.     Legal Standard for Issuing Sanctions

Defendants invoke both the Court's inherent power and 28 U.S.C § 1927 in order to attempt to sanction the undersigned. As Judge Rowland observed in *Cavelle v. Chi. Transit Auth*., 2019

3

U.S. Dist. LEXIS 228224 (N.D. Ill. July 10, 2019), "[i]t has long been understood that federal judges have a common-law power (sometimes called an inherent power) to impose sanctions on parties that needlessly run up the costs of litigation." *Id.*, at *4 (citing *Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1029 (7th Cir.); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991))."This authority applies also to sanctions against attorneys." *Cavelle*, 2019 U.S. Dist. LEXIS 228224, *4 (citing *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988)). The inherent authority allows courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."*Cavelle*, 2019 U.S. Dist. LEXIS 22822, at *4 (citing *Chambers*, 501 U.S. at 43 (citation and quotation omitted)). While a court can "fashion an appropriate sanction for conduct which abuses the judicial process …" *Cavelle*, 2019 U.S. Dist. LEXIS 22822, at *4 (citing *Chambers*, 501 U.S. at 45), before doing so it must find that "the culpable party *willfully abused the judicial process or otherwise conducted the litigation in bad faith*." *Cavelle*, 2019 U.S. Dist. LEXIS 22822, at *4 (quoting *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016)) (emphasis added).

The inherent power permits a court to sanction attorneys "for actions taken in bad faith, vexatiously, wantonly, or for oppressive reasons." *Johnson v. Cherry*, 422 F.3d 540, 548-49 (7th Cir. 2005) (citing *Chambers*, 501 U.S. at 45-46); *see also Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) ("[c]ourts have used phrases such as ... recklessly making a frivolous claim" to describe what constitutes "bad faith"); *Stive v. United States*, 366 F.3d 520, 522 (7th Cir. 2004) ("Recklessly making a frivolous claim is treated as bad faith within the meaning of the American rule"). However, a court may not use its inherent authority "to sanction attorneys for mere negligence." *Maynard v. Nygren*, 332 F.3d 462, 471 (7th Cir. 2003); *see also Kotsilieris v. Chalmers*, 966 F.2d 1181, 1185 (7th Cir. 1992) ("[W]e have held that the bad faith standard has

4

an objective component, and *extremely negligent* conduct, like reckless and indifferent conduct, satisfies this standard.") (emphasis added). The Seventh Circuit has instructed that "the inherent power of the court is a residual authority, to be exercised sparingly …" *see Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 614 (7th Cir. 2006) (internal quotation marks omitted).

Judge Rowland has also recognized that "[section 1927] allows a court to penalize a lawyer who 'multiplies the proceedings in any case unreasonably and vexatiously' ... liability under §1927 is personal to the lawyer." *Cavelle*, 2019 U.S. Dist. LEXIS 22822, at \*3-4 (citing *Cooke*, 919 F.3d 1024, 1029). Similar to the Court's inherent authority to sanction an attorney for actions taken in bad faith, vexatiously, wantonly, or for oppressive reasons, the purpose of Section 1927 "is to deter frivolous litigation and abusive practices by attorneys ... and to ensure that those who create unnecessary costs also bear them." *Cavelle*, 2019 U.S. Dist. LEXIS 22822, at \*3-4 (citing *Kapco v. C & O Enters.*, 886 F.2d 1485, 1491 (7th Cir. 1989)) (internal citations and quotations omitted).

### B. Defendants' Allegations of *Potential* Witness Tampering Have No Merit

As Judge Rowland has observed: "[w]itness tampering is serious." *Cavelle*, 2019 U.S. Dist. LEXIS 22822, at \*10 (citing *Emerson v. Dart*, 900 F.3d 469, 473 (7th Cir. 2018) ("we have long held that witness tampering is among the most grave abuses of the judicial process.") (internal citation and quotations omitted); *Ramirez*, 845 F.3d 772 (affirming sanction of dismissal of case with prejudice for witness tampering). **"Accusing a party of witness tampering is also serious."** *Cavelle*, 2019 U.S. Dist. LEXIS 22822, at \*10 (emphasis added). Here, there is no evidence that the undersigned – or any of Plaintiff's counsel – has tampered with any witness in this case. Rather, Defendants rely on an unsown, unverified, and inadmissible hearsay statement from Discovery Opt-In Timothy Lindberg to argue that Plaintiff's counsel have engaged in *potential* witness tampering. Defendants' Motion, at 3-5. **To be clear, Plaintiff's counsel rejects**

5

**Defendants' allegation.** In nearly 20 years of practice, the undersigned has never been: (1) the subject of sanctions; (2) investigated for potentially sanctionable conduct; or (3) *even alleged* to have engaged in potentially sanctionable conduct (until now). Defendants' allegations are completely manufactured and contrary to the undersigned's professional dealings during his entire legal career. They are also belied by the facts.

*First*, as Defendants admit, "on October 29, 2021, Opt-in Lindberg filed a consent to join this matter as a party plaintiff and to be represented by Plaintiffs' Counsel." Defendants' Motion, at 3; *see also* ECF No. 103-1. Notwithstanding this, Defendants procured a statement from Mr. Lindberg in which he alleges "I never asked to be a part of any legal matter against Jewel-Osco." Defendants' Motion, at 5.

*Second*, Mr. Lindberg has been an active participant in this lawsuit, having spoken with the undersigned counsel to prepare and review his discovery responses, conducting a search for documents responsive to Defendants' discovery requests, and twice coordinate scheduling of his deposition. For example, on June 29 and July 1, 2022, Plaintiff's counsel spoke with Mr. Lindberg regarding discovery and obtained full and complete information in response to, among other things, Defendants' interrogatories. On July 5, 2022, Plaintiff's counsel e-mailed Mr. Lindberg Defendant's discovery requests (for a second time) as well as his discovery responses for his review.[3] Ex. A, at ¶19. On July 6, 2022, Mr. Lindberg verified his original responses to Defendants' discovery requests. On August 31, 2022, Plaintiff's counsel and Mr. Lindberg exchanged e-mails regarding discovery. *Id.* On January 30, 2023, Plaintiff's counsel spoke with

---

[3] All communications with counsel are being sent separately to the Court for *in camera* review. To the extent possible, and so as not to waive the attorney-client privilege and/or attorney work product, redacted versions of communications will be sent to counsel for Defendants. Because the remaining exhibits, including Plaintiff's and the Subject Discovery Opt-Ins' discovery responses comprise hundreds of pages (and is expected to exceed the capacity of the ECF/CM system) they are being separately sent to the Clerk of the Court for filing on the Court's docket.

6

Mr. Lindberg about discovery, including his anticipated deposition. *Id.*, at ¶37. On April 26 and, again, on April 28, 2023 Plaintiff's counsel spoke with Mr. Lindberg regarding his deposition. *Id.* On May 4, 2023, Plaintiffs' counsel left a voicemail message for Mr. Lindberg regarding his deposition. *Id.* At 10:31 a.m. CDT on May 31, 2023, Plaintiffs' counsel spoke with Mr. Lindberg for 7 minutes regarding his deposition. *Id.* On May 31, 2023, Plaintiffs' counsel texted Mr. Lindberg regarding his deposition. *Id.* Mr. Lindberg responded later the same day. *Id.* At no time in the approximately year-and-one-half since joining the lawsuit, including during the above exchanges, did Mr. Lindberg represent that he did not want to be a part of the lawsuit or that Plaintiff's counsel was harassing and intimidating him.

*Third*, and without revealing the content of any privileged attorney-client communications between Plaintiff's counsel and Mr. Lindberg, it is not implausible to infer that he was advised by the undersigned that Defendants may seek sanctions against him if he were not to appear for his scheduled deposition, which is a position Defendants have previously expressed to this Court with respect to non-responsive Opt-Ins and which the undersigned believes he is ethically bound to explain to Mr. Lindberg. It is also not implausible to infer that Mr. Lindberg shared with Plaintiff's counsel – on a call the day before his deposition – previously undisclosed personal details about his home life and how he feared losing his job, that his store was understaffed and he did not have adequate coverage to attend his deposition the following day, and that counsel suggested he speak with his district manager in order to obtain coverage during the time period he was in Chicago for his deposition. It is also not implausible that the undersigned received a communication from Mr. Lindberg later the same day indicating that he was waiting to hear back from his district manager about store coverage. ECF No. 176-1, at ¶16.

7

*Fourth*, during the entirety of his representation of Mr. Lindberg, the undersigned has never threatened him, never stated that his employment at Jewel-Osco would be in jeopardy (for any reason, including whether or not he appeared for a deposition), and has never been instructed by Mr. Lindberg to withdraw him from the case. *Id.*, at ¶38. In addition, the undersigned has no power nor ability to "come after" Mr. Lindberg and his employment with Defendants. Defendants' Motion, at 5; *Id.*, at ¶39. Unfortunately, the undersigned believes Mr. Lindberg is fearful of losing his employment with Defendants. *Id.* Rather, the undersigned is still counsel for Mr. Lindberg and neither his statement to Defendants nor Defendants' Motion indicates otherwise. *Id.* The undersigned has, however, ceased all communication with not only Mr. Lindberg but all Opt-Ins in this case, a step that is detrimental to the investigation of these serious allegations and the undersigned's response to Defendants' Motion.[4] *Id.*

*Fifth*, despite claiming that the undersigned has engaged in "witness tampering and intimidation with related to opt-ins," (Defendants' Motion, at 1), Defendants have proffered no evidence of any alleged wrongdoing with respect to any other Opt-Ins. While Defendants' counsel, Jennifer Schilling, surmised at the June 7th hearing that the undersigned is responsible for the decision of 12 Opt-Ins to no longer participate in the case (June 7, 2023 Tr., at 13:18-21), there is no evidence that Plaintiff and/or her counsel had anything to do with the decisions of those individuals. Rather, and as Ms. Schilling and Defendants know, it is not unusual – indeed, it is routine – for currently-employed opt-ins to choose to discontinue their participation in a lawsuit for a variety of reasons including out of fear of retaliation or retribution by their employer.

---

[4] At least one current Discovery Opt-In has indicated to the undersigned that they feel threatened by Defendants because of their participation in the case, that they fear losing their job, that Defendants' senior managers have intimidated them at work, and that they have recently been given unreasonable work demands which appear tailored to disciplining them for participating in this case. However, given Defendants' allegations and the Court's concerns regarding witness intimidation, Plaintiff's counsel is unable to obtain a statement from them.

8

Defendants' Motion, at 2 ("I feel threatened … [that] Jewel-Osco might come after me and my employment with the company.").

*Finally*, Defendants provide no explanation or case law to support their position that Plaintiff's counsel has "tampered" with their own client. Indeed, Mr. Lindberg is a Discovery Opt-In and current client of the undersigned. Generally, "witness tampering" involves paying a witness to give false testimony, or keeping a witness from testifying, or otherwise interfering with an opposing party's witness in order to gain an advantage in litigation, none of those factors are present here (or are even alleged). The only evidence is that Plaintiff's counsel communicated with Mr. Lindberg for purposes of completing discovery and attending a deposition. Thus, there is no evidence, direct or circumstantial, of witness tampering. *Cavelle*, 2019 U.S. Dist. LEXIS 22822, at *9, 19-20 (finding no alleged witness tampering and, instead, sanctioning opposing party for making, as here, baseless allegations "with so little information" and awarding the aggrieved party their reasonable attorneys' fees and costs for, among other things, an evidentiary hearing and briefing on the defendants' motion); *Ramirez*, 845 F.3d at 781 (granting sanctions for witness tampering where witness offered money in exchange for favorable testimony, that he accepted the offer due to a variety of financial hardships, that he discussed with the plaintiff (and the other two witnesses) what his testimony would be, that the testimony he gave in exchange for money was false, and that, in truth, he had never observed any alleged misconduct against the plaintiff). While the prejudice Plaintiff is suffering is real and concrete, there is no evidence that the undersigned has taken any action in bad faith, vexatiously, wantonly, or for oppressive reasons, including witness tampering. *Johnson*, 422 F.3d 540, at 548-49. Accordingly, Defendant's Motion should, respectfully, be denied.

9

### C. Lindberg's Statement Was Procured in Violation of the Attorney-Client Relationship.

Defendants' Motion should be stricken. The evidence presented is not persuasive. As Defendants admit, Mr. Lindberg is "represented by Plaintiffs' Counsel." Defendants' Motion, at 3. Notwithstanding this, one of their district managers – and Mr. Lindberg's direct supervisor – spoke with Mr. Lindberg on numerous occasions regarding this lawsuit and his participation. *See* ECF No. 176-1, at ¶¶4-10, 13-16 (confirming that Defendants' current employee and district manager, Luigi De Matteo, spoke with Mr. Lindberg on numerous occasions in March, May, and June 2023 in order to, among other things, obtain a written statement regarding his participation in this action). Further, Defendants' Vice-President of Human Resources, Eric Stevenson, counselled Mr. De Matteo to obtain a written statement from Mr. Lindberg. *Id.*, at ¶14. Mr. Stevenson has a direct conflict of interest with Mr. Lindberg – he represented Defendants as the company's Rule 30(b)(6) designee at deposition and testified that Opt-Ins, such as Mr. Lindberg, were motivated to join the case for financial reasons. Exhibit C (Stevenson Dep. Tr.), at 152:14-15.

As Defendants' counsel is aware, it is professional misconduct and a violation of the Illinois Rule of Professional Conduct 8.4(a) for an attorney to knowingly assist or induce another to violate the Rules. Given Mr. Stevenson's status as Defendants' corporate designee – and the more than 3-hours that elapsed between Mr. De Matteo's first and subsequent contact with him regarding Mr. Lindberg – Plaintiff cross-moves to lift the current discovery stay for the purpose of deposing Mr. Stevenson and Mr. De Matteo and obtaining discovery directly relevant for Plaintiff's counsel to respond to Defendants' allegations of witness tampering, including determining whether they were advised by Defendants' counsel to communicate with Mr. Lindberg and procure his statement without Plaintiff's counsel's knowledge.

### D. Defendants' Counsel's Unsubstantiated Allegations at the June 7th Hearing.

In an attempt to portray that the undersigned has engaged in a pattern and practice of witness tampering and other alleged improprieties, Defendants' counsel alleged at the June 7th hearing with this Court that the undersigned "has engaged in the same behavior before another court and has a special master and other sanctions before him." June 7, 2023 Tr., at 10:23-25. However, as Plaintiff's counsel immediately indicated:

> "I've not been sanctioned in any court. I had one case recently where it was very contentious and a special master was ordered to be overseeing discovery. That's it, Your Honor. I've never been sanctioned. I've never been alleged to have tampered with any witness, let alone a current client whom defendants procured a statement from."

June 7, 2023 Tr., at 11:3-9. Defendants have provided no evidence of any alleged sanctions, let alone that any court has sanctioned the undersigned for "the same behavior" or witness tampering and discovery abuse. Such comments are completely improper, impugned the undersigned's credibility and integrity, and violate multiple Illinois Rules of Professional Conduct.[5]

## III. DEFENDANTS' UNFOUNDED ALLEGATIONS REGARDING PLAINTIFF'S AND THE DISCOVERY OPT-INS SUPPLEMENTAL VERIFICATIONS

### A. Plaintiff and the Subject Discovery Opt-Ins' Long History of Participation in Discovery.

For more than a year, Plaintiff and the Subject Discovery Opt-Ins have actively participated in discovery in this action. As outlined in detail in the accompanying declarations of Jason Conway and Daniel Levin, Plaintiff and the Subject Discovery Opt-Ins have: (1) participated in numerous phone calls regarding Defendants' discovery requests including, as is applicable here, Defendants'

---

[5] *See e.g.*, Rule 3.3 (candor towards the tribunal), Rule 3.5 (engage in conduct intended to disrupt the tribunal), and Rule 8.4 (engage in conduct that involves dishonesty and misrepresentation and is prejudicial to the administration of justice). Accordingly, Plaintiff hereby cross-moves for sanctions against Defendants and their counsel, including Ms. Schilling, for the time and expense in responding to their baseless allegations and respectfully request that the Court refer Ms. Schilling to the Illinois Attorney Registration and Disciplinary Commission for investigation regarding her unfounded statements.

11

interrogatories, and each person's responses to same; (2) verified – either via e-mail or telephone – that their interrogatory responses were true and accurate; (3) supplemented, on many occasions, their interrogatory responses to provide additional information in response to the Court's discovery orders; and either participated in, or has scheduled, a deposition at Defendants' counsel's office in Chicago. Ex. A, at ¶¶3-26.

For example, counsel communicated with Plaintiff, Lisa Piazza, via e-mail on March 16, May 2, and June 10, 2022 regarding Defendants' discovery requests and her responses, including as to Defendants' interrogatories. *Id.*, at ¶3. Counsel also had multiple phone calls with Ms. Piazza regarding her discovery responses, including on May 2, 2022 (32 minutes); June 9, 2022; June 10, 2022 (27 minutes); June 29, 2022 (27 minutes); August 11, 2022 (28 minutes); August 12, 2022 (21 minutes); August 15, 2022 (18 and 19 minute calls, respectively); August 18, 2022; September 12, 2022 (40 minutes), September 13, 2022; September 14, 2022 (33 minutes); September 20, 2022 (68 minutes); October 7, 2022; and November 18, 2022 (32 and 38 minutes, respectively). The undersigned also contacted all 19 Subject Discovery Opt-Ins in late June and early July 2022 in order to finalize their original discovery responses. *Id*. All were sent verifications to sign via DocuSign. *Id.*, at ¶¶4, On May 2, 2022, Plaintiff served her verified discovery responses on Defendants. *Id.* On July 7, 2022, all 19 Subject Discovery Opt-Ins served their verified discovery responses on Defendants. *Id*., at ¶5.

On November 18, 2022, Plaintiff and the Subject Discovery Opt-Ins supplemented their discovery responses in accordance with the Court's discovery order dated November 4, 2022. ECF No. 145; *Id*., at ¶27; *see also* Exhibit D (declaration from co-counsel confirming work undertaken in connection with obtaining supplemental discovery responses). The Subject Discovery Opt-Ins' supplemental responses remained largely unaffected by the Court's order – most information

12

responsive to Defendants' interrogatories had already been provided to Defendants' counsel, and others had no additional responsive information. Ex. A, at ¶32. In almost all instances, Plaintiff and the Subject Discovery Opt-Ins indicated that they had no additional information to provide in response to Defendants' interrogatories. *Id*., at ¶33. Indeed, of the modest changes, nearly all were universal. *Id.* For example, the Subject Discovery Opt-Ins' response to Defendants' Interrogatory number 3 was amended to provide further information about college majors, for example, where a Subject Discovery Opt-In previously responded that they had attended college. *Id.* This information was already in the possession of Plaintiff's counsel. *Id.* The Subject Discovery Opt-Ins' responses to Interrogatory number were supplemented to distinguish informal versus formal complaints they may have made while employed at Jewel-Osco. *Id.* Again, this was information that was largely already in Plaintiff's counsel's possession. Plaintiff and 12 of the Subject Discovery Opt-Ins verified – either by phone or e-mail with Plaintiff's counsel – that their supplemental responses were true and correct. *Id.*, at ¶34. With respect to 7 Subject Discovery Opt-Ins – Timothy Desch, Tod Karasoff, Timothy Lindberg, Mark Paulsen, James Gibson, and Eric Beauregard – Plaintiff's counsel did not speak with them but e-mailed them revised responses based on counsel's earlier discussions with them. *Id.* None indicated they had any changes and, accordingly, the responses for Plaintiff and all 19 Subject Discovery Opt-Ins were served on Defendants.

In approximately May 2023, the Subject Discovery Opt-Ins served additional supplemental responses (with new verifications) as a result of documents produced by Defendants on April 28, 2023 and May 3, 2023 and the deposition testimony of Defendants' Rule 30(b)(6) designee, Eric Stevenson, on May 5, 2023.[6] The documents – some of which Defendants' counsel represented

---

[6] The verifications reiterated that the supplemental responses were accurate and stated:

13

should have been produced in September 2022 but were not – had a direct bearing on, among other things, the Subject Discovery Opt-Ins response to Defendants' Interrogatory number 5. As a result, to date, Plaintiff and the following Subject Discovery Opt-Ins have served additional supplemental interrogatory responses on Defendants: Lakasha Brown, John Carlson, Cheryl Dillon, James Gibson, Camerino Hurtado, Tod Karasoff, Jessica Kuschel (Burke), Robert Kisielewicz, Mark Paulsen, Michael Ray, Aurelio Salazar, Michelle Schreck, Robert Strawn, and Joseph Winquist. Nicole Brock is finalizing her responses. Ex. A, at ¶31. Timothy Desch's phone number is now disconnected, and Plaintiff's counsel is attempting to contact him. Ashley Moore has remained non-responsive, and Timothy Lindberg is the subject of Defendants' Motion. *Id*., at n.2. Plaintiff has also provided verified supplemental responses for Discovery Opt-Ins Elizabeth Harper, Christopher Berlanga, Patrick Picchietti, March Thierry, and Todd Pflueger. Discovery responses for five replacement Discovery Opt-Ins, Gary Miller, Adam Mobley, Lisa Garland, Radoslaw Wazny, and Terri Williams, are due in late June. *Id*., at n.3.

At deposition, Plaintiff and Subject Discovery Opt-Ins, John Carlson and Robert Kisielewicz, testified that they reviewed their initial discovery responses as well as multiple sets of supplemental responses and verified that they were true and accurate *before* they were served on Defendant's counsel. Exhibit E (Piazza Dep. Tr., at 137:24-138:1; 152:12-14; 154:6-9; 155:23-24; 156:13-18); Exhibit F (Carlson Dep. Tr., at 242:22-243:1); Exhibit G (Kisielewicz Dep. Rough Tr., at 151:9-11).

---

> I have read the aforementioned responses and, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that they are true and correct to the best of my knowledge, information, and belief. I also confirm (and further declare under penalty of perjury) that my earlier responses to Defendants' discovery requests, including any that were previously supplemented, are also true and correct to the best of my knowledge, information, and belief, and were verified by me prior to service on Defendants on November 18, 2022.

*See* Ex. A, at ¶31.

### B. Plaintiff's Counsel's Mistaken Belief as to the Supplemental Verifications.

After being alerted to the verification issue – impacting an earlier set of supplemental discovery responses – Plaintiff's counsel immediately acknowledged the issue with Defendants' counsel via e-mail on May 4, 2023, and during a meet and confer on May 8, 2023. Ex. A, at ¶30. Plaintiff's counsel also disclosed the issue to the Court in a status report filed on May 8, 2023. ECF No. 170, at ¶18. The undersigned's mistake was not deliberate, intentional, or in furtherance of a fraud on the Court. It was far more benign – it was the undersigned's assumption that updated verifications had been received as part of sharing the discovery responsibility with co-counsel. In short, it was an accident that, in part, was attributable to undated verifications that were previously signed by Plaintiff and the Subject Discovery Opt-Ins. Plaintiff is cognizant of this Court's prior discovery orders and has genuinely and sincerely worked to comply with them. With the exception of the verification issue (for responses that have since been updated), the undersigned produced verifications that he thought were executed by the Opt-Ins for the supplemental discovery responses. Once he was alerted of his mistake, the verifications were supplemented, and the answers properly verified. However, Plaintiff's counsel did not, nor has not, "willfully abused the judicial process or otherwise conducted the litigation in bad faith," nor engaged in "frivolous litigation and abusive practices" such that sanctions under Section 1927 or the Court's inherent authority should issue. *Cavelle*, 2019 U.S. Dist. LEXIS 22822, at *3-4.[7]

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety and Plaintiff's Cross-Motion granted.

Dated: June 12, 2023                                     Respectfully submitted,

---

[7] At the June 7th hearing, Defendant confirmed that it was not asking for the Court to dismiss the lawsuit or otherwise sanction Plaintiff. June 7, 2023 Tr., at 13:10.

15

*s/ Jason Conway*

Jason Conway, Esq.
**CONWAY LEGAL, LLC**
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 278-4782
Fax: (215) 278-4807
jconway@conwaylegalpa.com

Daniel Levin, Esq.
Nicholas J. Elia, Esq.
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
dlevin@lfsblaw.com
nelia@lfsblaw.com

Douglas M. Werman
Maureen A. Salas
Sarah J. Arendt
**WERMAN SALAS P.C.**
77 W. Washington, Suite 1402
Chicago, IL 60602
(312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com
sarendt@flsalaw.com

***Attorneys for Plaintiff and the ASD Class and ASD Collective***

## **CERTIFICATE OF SERVICE**

I certify that, on June 12, 2023, I caused a true and correct copy of the aforementioned document to be served on all counsel of record in this matter through operation of the Court's CM/ECF system.

*s/ Jason Conway*
Jason Conway
